UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WASHINGTON | ) | CASE NO.  1:15CV1439 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM AND OPINION** |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security

denying Michael Washington Disability Insurance Benefits (DIB).  The Plaintiff asserts that the

Administrative Law Judge (ALJ) erred in her February 14, 2014 decision in finding that Plaintiff was

not disabled because he retained the residual functional capacity (RFC) to perform a reduced range

of sedentary work (Tr. 18-32).   The Court finds that substantial evidence supports the ALJ's decision

for the following reasons:

I. **PROCEDURAL HISTORY**

Plaintiff, Michael Washington, filed his application for DIB on December 29, 2011, alleging

he became disabled on September 13, 2011 (Tr. 171-172).  Plaintiff's application was denied initially

and on reconsideration (Tr. 119-122, 127-129).  Plaintiff requested a hearing before an ALJ, and, on

June 25, 2013, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ,

1

and Robert A. Mosely, a vocational expert, also testified (Tr. 39-78).

On February 14, 2014, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 18-32).  Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-5, 16-17).  Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

## II.    STATEMENT OF FACTS

Plaintiff was born on May 17, 1966, which made him forty-five years old as of his alleged onset date (Tr. 171).  Plaintiff has a General Education Diploma (Tr. 189).  His past relevant work was as a file clerk, light and semi-skilled, and as a material coordinator, which was light and skilled (Tr. 70, 190).

## III.    SUMMARY OF MEDICAL EVIDENCE

A colonoscopy on February 9, 2011 showed active ileitis with multiple ulcers and a small partial stricture (Tr. 232).  The pathology report from the terminal ileum biopsy demonstrated small bowel mucosa with focal active ileitis and detached fragments of fibrinopurulent exudate, and the rectum biopsy demonstrated large intestinal-type mucosa with no pathologic change (Tr. 231).

Plaintiff was seen in the emergency room on March 1, 2011, and was found unconscious and frothing at the mouth (Tr. 228).  Impression was persistent nausea, vomiting, and vertigo, possibly due to general anesthesia (Tr. 228).  He had a previous dermatological procedure performed for drainage of chronic hydradenitis in the groin under a general anesthesia, and was given two Percocets and went home (Tr. 246).  He was not feeling well and felt nauseous and had episodes of vomiting

2

(Tr. 246).  The dizzy spell was found to be most consistent with vertigo or peripheral in etiology in the form of benign positional vertigo (Tr. 247).  Initial impressions were altered mental state, hypoglycemia, and narcotic overdose (Tr. 269).  CT of the cervical spine revealed mild degenerative changes (Tr. 277).

Plaintiff was seen by Dr. Kadhim, complaining of bilateral hand numbness and tingling (Tr. 252).  Examination revealed a positive Tinel sign consent with carpal tunnel syndrome (Tr. 252).

Plaintiff was hospitalized from March 3, 2011 through March 7, 2011, after coming in with complaints of nausea, vomiting, and dizziness (Tr. 286).  A urology consult opined that the syncopal episode was most likely related to dehydration related to his recurrent vomiting.  An esophagogastroduodenoscopy with biopsy was performed on March 3, 2011, and impression was peptic ulcer disease and was believed to play a role in his symptoms of nausea and vomiting (Tr. 234). Final diagnoses were nausea with vomiting, toxic encephalopathy, regional enteritis, hematemesis, duodenal ulcer, benign paroxysmal positional vertigo, gastritis, dueodenitis, chronic pain syndrome, peripheral neuropathy, thoracic or lumbosacral neuritis or radiculitis, hypotension, and tobacco use disorder (Tr. 287).

On June 27, 2011, Plaintiff was seen by Dr. Edmond W. Blades, who reported a history of Crohn's disease (Tr. 226).  Plaintiff was on Remicade, but stopped doing well; his condition worsened, so his medication was changed to Cimzia (Tr. 226).  Impression was Crohn's disease in remission (Tr. 226).

Plaintiff was hospitalized from September 18, 2011 through September 20, 2011, after he suffered a syncopal episode, chracterized by a tonicoclonic movement (Tr. 239).  He lost consciousness, was unresponsive, and collapsed (Tr. 305).  He tested positive for THC, and Dilantin was increased (Tr. 240). An MRI was performed, which was negative, as well as a CT scan (Tr. 308-

3

309).  An x-ray of the right foot demonstrated nondisplaced fracture of the right great toe terminal phalanx (Tr. 309).  Plaintiff's wife described three different episodes, including staring spells, unexplained bed wetting, and tonic clonic seizure (Tr. 323).  Final diagnoses were localization-related epilepsy and epileptic syndromes, delirium, regional enteritis, closed fracture of the phalanx of the foot, dysthymic disorder, cocaine abuse, peripheral neuropathy, and thoracolumbar neuritis (Tr. 240).

Plaintiff was hospitalized from December 7, 2011 through December 8, 2011, with final diagnoses of intervertebral disk disorder with myelopathy, cervical region, regional enteritis, epilepsy, and tobacco use disorder (Tr. 242).  An anterior cervical discectomy and fusion, collared with structural allograft was performed for herniated disc C5-6 with myelopathy (Tr. 244).  Plaintiff developed weakness and sharp shooting pain (Tr. 340).

Plaintiff began physical therapy on January 16, 2012 for his cervical spondylosis with myelopathy resulting in decreased range of motion and neck pain (Tr. 383).  Plaintiff was still experiencing bilateral upper extremity shooting pain, but more numbness and tingling, intermittently but daily (Tr. 385).  Examination revealed decreased cervical spine range of motion and strength was 3+/5 grossly in all cervical plans (Tr. 387).  Plaintiff had physical therapy through February 17, 2012, and was still reporting numbness and tingling daily, but intermittent (Tr. 396).

At a followup appointment on January 12, 2012, he was doing well, but still had several brief episodes of numbness of the left upper extremity and decreased range of motion (Tr. 347).

Plaintiff had a followup appointment with Dr. Blades for his Crohn's disease, which was reported to be stable (Tr. 368).  Assessment was Crohn's Disease very well controlled (Tr. 369).

On March 15, 2012, Plaintiff underwent a right ganglion cyst excision (Tr. 410).  The pathology report was consistent with a ganglion cyst (Tr. 412).

4

An MRI of the left lower extremity performed on March 27, 2012 revealed mild tenosynovitis of the posterior tibial tendon (Tr. 400).

Dr. Mervart wrote a report on March 28, 2012, stating that Plaintiff was experiencing increased number of "twinges" (Tr. 417).  The Doctor reported that it was possible that during the anesthetic, patient's neck was hyperextended (Tr. 417).

Plaintiff was seen by Dr. Martinez on April 3, 2012, and complained of ankle pain rated seven out of ten (Tr. 465).  Examination revealed venous stasis changes in the left lower extremity; walked with an antalgic gait; mild swelling of the left posterior aspect; and tenderness of the left ankle, left posterior aspect, Achilles tendon and posterior tibia tendon (Tr. 465).  Impression was tendinitis of the left ankle (Tr. 465).

On April 9, 2012, Plaintiff underwent a psychological evaluation at the request of the state agency by Richard N. Davis, psychologist (Tr. 420).  Plaintiff reported he was a slow developer (Tr. 421).  He was kicked out of school one month prior to graduation (Tr. 421).  He presented with a very depressed affect, and stated that he never tried to kill himself, but has thought about it (Tr. 421).  The records state Plaintiff had some fragmentation of thoughts, flight of ideas, and was rambling (Tr. 422-423).  He had difficulty sleeping, sometimes felt worthless and life was hopeless, felt guilty about not completing college, and had very little energy (Tr. 423).  Plaintiff reported that he was anxious over his physical problems and had occasional anxiety attacks that cause him to hyperventilate (Tr. 423).  He was very preoccupied with all of his physical problems (Tr. 423).  He would not deal well with the stress and pressure in a work setting (Tr. 425).  The evaluator stated Plaintiff appeared to be rather severely depressed (Tr. 427).

On April 27, 2012, Plaintiff complained of difficulty with pain, but some improvement at fifty percent (Tr. 467).  He had less tenderness to palpation over the Achilles at the insertion and in the

5

bursal region (Tr. 467).  Impression was persistent Achilles bursitis, tendinitis left ankle (Tr. 467).

On May 2, 2012, Plaintiff was seen for physical therapy, and diagnoses were bursitis or tendinitis Achilles, pain in limb, gait abnormality, and muscle weakness (Tr. 432).  Plaintiff complained of left ankle pain (Tr. 432).  Examination revealed that he walked with a stiff gait, had tenderness to palpation along left Achilles tendon, decreased strength of the left foot, and decreased range of motion (Tr. 433).  Impairments included decreased balance, poor body mechanics, decreased flexibility, impaired gait, decreased muscle performance, increased pain, decreased range of motion, and swelling (Tr. 434).  Plaintiff reported that he was unable to perform or it was extremely difficult for him to lift an object from the floor, perform light and heavy activities around the home, walk two blocks or a mile, stand for one hour, sit for one hour, run on even or uneven ground, make sharp turns while running fast, and hopping (Tr. 439).

Plaintiff was seen by Dr. Martinez on May 29, 2012, and showed improvement in his left ankle pain (Tr. 468).  His new complaint was generalized aches and pains in the right ankle, right and left hip, and SI joints (Tr. 468).  Examination revealed some slight swelling medially posterior to the medial malleolus (Tr. 468).  Impression was resolving Achilles bursitis and tendonitis on the left and questionable etiology of generalized rheumatoid arthritis (Tr. 468).

Plaintiff was discharged from physical therapy on June 4, 2012 (Tr. 458).  Plaintiff still has pain complaints (Tr. 459).  He did have an improved range of motion, made some progress in his ambulation and ability to squat, but no change in his weakness (Tr. 460).

On June 27, 2012, Plaintiff was seen by Dr. Allen Segal (Tr. 472). Plaintiff complained of ankle swelling, arm pain, leg pain, and neck pain (Tr. 473). Pain radiated down from arms and his arms ached since he underwent the spinal fusion, he had ankle swelling, neck pain, and dizziness (Tr. 472).  Plaintiff was on Vicodin and Mobic (Tr. 473). Diagnosis was inflammatory polyarthropathy

(Tr. 474). Examination revealed swelling first through fifth PIP joints 1+, left elbow swelling 1+, left hip tenderness, edema, and swelling in the first IP joint (Tr. 476). There was decreased range of motion of the left ankle and lumbar spine (Tr. 477). Assessment was inflammatory polyarthropathy, ankle swelling, arm pain, neck pain, regional enteritis, dizziness, generalized convulsive epilepsy, and Crohn's disease (Tr. 477).

On July 9, 2012, Dr. Chong documented complaints of generalized body aches, pain in his arms which was worse when he rested his elbow on an object, intermittent numbness of his entire hands which occurred more often at night, less than thirty minutes of morning stiffness and fatigue, and cold intolerance (Tr. 491). Dr. Chong stated that Plaintiff met the criteria for fibromyalgia (Tr. 491). Assessment was diffuse myalgias, fatigue, carpal tunnel syndrome, and poor sleep pattern (Tr. 493). His generalized myalgias were consistent with fibromyalgia and met the ACR 2010 criterial (Tr. 493).

At an appointment with Dr. Chong on August 9, 2012, testing revealed Plaintiff had severe sleep apnea, he was awaiting an appointment with his bilateral carpal tunnel syndrome, and he was started on Vitamin D replacement due to a deficiency (Tr. 486). Assessment was Vitamin D deficiency, fibromyalgia, severe obstructive sleep apnea (Tr. 487). The Doctor stated that Plaintiff continued to have diffuse myalgias consistent with fibromyalgia, which was likely related to his Vitamin D deficiency, depression, and sleep apnea (Tr. 487).

On September 21, 2012, Plaintiff was seen by Dr. Chong, and reported intermittent headaches after starting with his CPAP machine (Tr. 481). Assessment was Vitamin D deficiency on replacement, fibromyalgia, severe obstructive sleep apnea on CPAP, and bilateral carpal tunnel syndrome (Tr. 482). Plaintiff had widespread pain with multiple causes of central sensitization, including depression, sleep apnea, Crohn's disease, and Vitamin D deficiency (Tr. 483).

7

On November 29, 2012, Plaintiff was seen in the neuromuscular center regarding sensory changes affecting the legs and arms (Tr. 502). Symptoms started around 2006 with numbness and swelling affecting the feet, and then in 2011 was found to have a herniated disc and had surgery (Tr. 502).   Plaintiff reported that his arms felt as if his muscle wanted to "fall off the bone" (Tr. 503). Examination revealed decreased sensation below the neck with most profound loss of prick and vibration in the feet (Tr. 504). It was reported that an EMG from November 29, 2012 revealed generalized sensorimotor polyneuropathy, axon loss in type and moderate in degree electrically and no evidence of a left lumbosacral motor radiculopathy, although a sensory radiculopathy could not be excluded (Tr. 504).  Impression was peripheral polyneuropathy, moderate, cervical myelopathy with status post cord decompression December 2011 with ongoing symptoms of myelopathy, myofacial pain syndrome, and idiopathic epilepsy (Tr. 504-505).

 In December 2012, neurologist Steven J. Shook, M.D. evaluated Plaintiff, and diagnosed him as having moderate peripheral polyneuropathy as demonstrated by EMG testing resulting in decreased sensation below the neck with profound loss of prick and vibration in the feet (Tr. 28, 504). At that examination, Plaintiff maintained 5/5 motor strength, his gait was narrow based and stable, and he had a good range of motion in his neck and extremities (Tr. 28, 503-505).

After reviewing the medical records, in October 2012, state agency doctor Gerald Kylop, M.D. opined that Plaintiff was capable of carrying twenty pounds occasionally, ten pounds frequently, could stand for six hours in a work day, and sit for six hours in a work day (Tr. 111).  Dr. Kylop opined that Plaintiff had no balancing, kneeling, stooping, or crouching limitations, but that Plaintiff was limited to frequent climbing of ramps or stairs, no climbing of ropes, scaffolds, or ladders, and occasional crawling (Tr. 29, 112).  He determined that Plaintiff would have no handling, fingering, or feeling limitations, but that Plaintiff had limited overhead reaching (Tr. 113).  He opined that Plaintiff should

8

avoid all exposure to hazardous machinery (Tr. 113).

In October 2012, state agency psychologist Paul Tangemen, Ph.D. opined that Plaintiff's depression generally resulted in moderate limitations, although he determined that Plaintiff was not significantly limited in social interactions (Tr. 29, 114-115).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified that he has pain in his arms and legs, and that his memory and concentration is not as good as it was before his seizure (Tr. 46). He has trouble standing for long periods of time and sitting for long periods can be uncomfortable (Tr. 46). Plaintiff testified that he walks a block a day and that he can sit for periods of time, but that he would need to get up and move around after twenty minutes to half an hour due to tingling in his legs (Tr. 57-58). Plaintiff's arms fall asleep if he raises them too high or holds them up for too long (Tr. 46-47). He believes his sleep apnea affects his memory (Tr. 47). Plaintiff testified that he has positional vertigo, which is not as severe now as it was at the onset date (Tr. 55-56). He stated that physical therapy after his neck surgery worked well and that he has a good range of motion in his neck (Tr. 56). Plaintiff testified that he could lift ten pounds, but not continuously (Tr. 56-57).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be

9

found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and
416.920(c)(1992);

3.  If an individual is not working and is suffering from a severe
impairment  which meets the duration requirement, *see* Sections 20
C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent
to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1,
a finding of disabled will be made without consideration of vocational
factors (Sections 20 C.F.R. 404.1520(d)  and 416.920(d) (1992);

4.  If an individual is capable of performing the kind of work he or she has
done in the past, a finding of "not disabled" must be made (Sections 20
C.F.R. 404.1520(e) and 416.920(e) (1992);

5.  If an individual's impairment is so severe as to preclude the
performance  of the kind of work he or she has done in the past, other
factors including age, education, past work experience and residual
functional capacity must be considered to determine if other work can
be performed (Sections 20 C.F.R. 404.1520(f) and  416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward

with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that

alternate jobs in the economy are available to the claimant, considering his age, education, past work

experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir.

1990).

## VI.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes

a determination of disability.  This Court's review of such a determination is limited in scope by

Section  205 of the Act, which states that the "findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).

Therefore, this Court is limited to determining whether substantial evidence supports the

10

Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII.  ANALYSIS

Plaintiff raises two issues:

A.   WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN HER ANALYSIS OF THE PLAINTIFF'S PAIN COMPLAINTS.

B.   WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN NOT CONSIDERING ALL OF PLAINTIFF'S IMPAIRMENTS IN COMBINATION.

The ALJ found that Plaintiff's severe impairments included degenerative disc disease of the cervical spine, epilepsy, peripheral polyneuropathy, mild bilateral carpal tunnel syndrome, and depression (Tr. 23). After reviewing the medical evidence in the record and considering Plaintiff's testimony, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. Section 404.1567(a), except that he can lift and carry ten pounds occasionally; stand and walk for two hours and sit for six but with a sit stand option every hour for about five minutes; perform postural

11

activities occasionally, except no ladders, ropes, or scaffolds; reach in front frequently; reach overhead occasionally; frequently handle, finger and feel; cannot be exposed to hazardous conditions; perform simple routine tasks, with short, simple instructions, make simple decisions and have few workplace changes (Tr. 27).  Based on the testimony from a vocational expert, the ALJ concluded that Plaintiff could not perform his past relevant work, but that a person with his age, education, work experience, and RFC could perform a significant number of jobs, and that, accordingly, Plaintiff was not disabled (Tr. 30-31).

> A.    WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN
>        HER ANALYSIS OF THE PLAINTIFF'S PAIN COMPLAINTS.

First, Plaintiff argues that the ALJ erred by failing to perform proper pain analysis (Pl. Br. 11-13).  Under the Social Security Regulations, once a clamant establishes a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the claimant's ability to perform work-related activities.  20 C.F.R. Section 404.1529.  Plaintiff asserts that the record contained many reports of his pain complaints to doctors that supported his subjective complaints of pain, and that the ALJ did not consider Plaintiff's medications and side effects or the fact that Plaintiff engaged in physical therapy.

The Social Security Regulations establish a two-step process for evaluating pain (*See*, 20 C.F.R. Section 416929, SSR 96-7p.  First, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.  *See, id.; Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 117 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services,* 801

F.2d 847, 853 (6th Cir. 1986).  In other words, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See, id.*.  Secondly, the ALJ must then determine the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See, id.*

Here, the ALJ reviewed the medical evidence, and concluded that, while the medical records documented the existence of any impairment that could reasonably be expected to produce symptoms of pain, the claimant's allegations of disabling symptoms and limitations are not fully credible.

Plaintiff argues that doctors' reports discussing Plaintiff's left ankle pain, neck pain, arm pain, physical therapy, and medications all support a finding of disability (Pl's Br. at 12-13).  However, the ALJ discussed each of those medical records and concluded that, while they supported the many functional limitations contained in the RFC, they did not support a finding of disability.  The ALJ noted that the MRI of Plaintiff's left ankle in 2012 showed tendonitis, and Plaintiff's ankle range of motion and strength improved with treatment within a few months (Tr. 24, 465-69).  Furthermore, the ALJ discussed Plaintiff's neck surgery in December 2011 and the subsequent records in January 2012 that Plaintiff reported doing well after the surgery with some restriction of neck range of motion and brief episodes of numbness (Tr. 28, 347).  The ALJ also considered the neurologist's evaluation of Plaintiff and the accompanying diagnosis of peripheral polyneuropathy (Tr. 28, 502).  The neurologist also pointed out that Plaintiff had no signs of atrophy, maintained 5/5 motor strength, had normal reflexes, maintained a good range of motion in his neck and extremities with no signs of edema (Tr. 28, 504).  Because of the medical records relating to Plaintiff's spinal fusion, epilepsy and polyneuropathy, the ALJ rejected that portion of the state agency doctor's medical opinion that Plaintiff could walk up to six hours in an eight-hour workday, and, instead, limited Plaintiff to no more than two hours of walking in a workday (Tr. 29).

The ALJ also correctly considered Plaintiff's statements about his activities and his limitations. Plaintiff testified that he could lift ten pounds occasionally - a limitation contained in the ALJ's RFC (Tr. 27, 56-57).  Plaintiff testified that his arms fell asleep if he raised them high or held them up for too long; the ALJ limited Plaintiff to occasional reaching overhead (Tr. 27, 46-47).  That ALJ reviewed Plaintiff's testimony that he was able to write, dress, and feed himself as support for the conclusion that Plaintiff could frequently handle, finger, and feel (Tr. 28).  The ALJ also considered Plaintiff's testimony that he has difficulty walking, but also noted the medical records demonstrating that Plaintiff maintains a stable gait, with full range of motion and reflexes in the lower extremities (Tr. 29).  The ALJ also indicated that Plaintiff had only mild restrictions in his activities of daily living, and that Plaintiff lived with his girlfriend, was able to perform household chores and care for himself (Tr. 26).   Therefore, the ALJ properly credited Plaintiff's statements, except when the statements were not supported by medical evidence.  *See, McCoy, ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) ("Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability.")

Next, Plaintiff's argument that the ALJ did not consider his medication and its side effects are not supported by the record.  However, the ALJ did consider the entire medical record, which included doctors' notations about the medication prescribed to Plaintiff.  While Plaintiff argues that "[t]hese medications have side effects including depression, headaches, dry mouth, feeling off balance, and trouble with his memory" (Pl.'s Br. at 13), he never indicated that such side effects rendered him disabled.   In addition, there is no evidence in the record that he reported such side effects to his doctors.  Nevertheless, the ALJ considered those side effects for which the record supported functional limitations. The most serious side effect noted by Plaintiff - depression - was considered by the ALJ as a severe impairment, and the RFC contains mental limitations of simple routine tasks with simple short instructions, making simple decisions and having few workplace changes (Tr. 27).

Finally, the fact that Plaintiff underwent physical therapy does not prove he was disabled by pain.  The physical therapy notes cited by Plaintiff in his brief relate to his left Achilles tendonitis, and were considered by the ALJ (Tr. 24).   They disclose that with physical therapy and wearing a boot, Plaintiff's tendonitis was improved, and that "the pain has decreased significantly" (Tr. 468).  Since Plaintiff's tendonitis resolved well within twelve months, it was not a severe impairment (Tr. 24).

Based upon substantial evidence, the ALJ correctly concluded that Plaintiff's symptoms of pain are not totally disabling.

B.      WHETHER THE ADMINISTRATIVE LAW JUDGE
        ERRED IN NOT CONSIDERING ALL OF PLAINTIFF'S
        IMPAIRMENTS IN COMBINATION.

Plaintiff next argues that the ALJ "evaluated [Plaintiff's] conditions singularly, but not in combination" (Pl.'s Br. 13-15).   However, the ALJ did mention a combination of Plaintiff's impairments when determining some of Plaintiff's limitations ("the combined limiting effects of the claimant's spinal fusion, epilepsy, and polyneuropathy limit his ability to stand and walk to no more than two hours in an eight-hour workday") (Tr. 29). Furthermore, the ALJ posed hypothetical questions to the Vocational Expert that took into consideration all of Plaintiff's impairments together, which shows that the ALJ considered Plaintiff's impairments in combination (Tr. 71).

Furthermore,  Plaintiff argues that the ALJ should consider Plaintiff's non-severe impairments, such as his Crohn's disease, left Achilles tendinitis, fibromyalgia, and sleep apnea, in combination with his severe impairments.  However, the ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the listings, and also considered all of Plaintiff's impairments in combination, including his non-severe impairments.  In addition, the ALJ specifically mentioned several of Plaintiff's non-severe impairments in his RFC discussion, such as Plaintiff's sleep apnea and Crohn's disease (Tr. 29).  In addition, in assessing Plaintiff's RFC, the ALJ considered Plaintiff's functional limitations in regard to Plaintiff's left Achilles tendinitis, when he

concluded, based on the medical records reviewed, that Plaintiff maintained a stable gait, with full range of motion and reflexes in his lower extremities (Tr. 29).

Based upon the record, there is substantial evidence that the ALJ considered all of Plaintiff's impairments in combination.


**VIII.**  **CONCLUSION**

Based upon a review of the  record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sedentary work, and, thus, was not disabled.  Hence, he is not entitled to DIB.


Dated: August 10, 2016                             _____*/s/George J. Limbert*_____
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE